## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DR. THOMAS C. WELTON and          )
MARY E. WELTON, husband and wife, )
                                  )
            Plaintiffs,           )
                                  )
v.                                )          Case No.14-4066-DDC/KGG
                                  )
AMCO INSURANCE COMPANY,           )
                                  )
            Defendant.            )
_____)

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

Now before the Court is Plaintiffs' "Motion to Compel the Production of the

Phoenix Restoration Fire Report and AMCO Insurance's Claim Files, Investigation

Materials and Activity Logs Post October 2012." (Doc. 18.) For the reasons set

forth below, the Court **GRANTS in part** and **DENIES in part** this motion.

## BACKGROUND

Plaintiffs bring the present action alleging that Defendant insurance

company "fail[ed] to pay the total amount of fire damages . . . for a fire that broke

out in Plaintiffs' garage on January 18, 2012." (Doc. 19, at 2.) Prior to the filing o

this lawsuit, the parties engaged in a mediation on September 26, 2013, in which

their respective experts had vastly different calculations of Plaintiffs' damages.

According to Plaintiffs, thereafter, "[t]he mediator recommended that both

adjusters go together to the Property and see what fire damages they could work out together to recommend to each of their clients." (*Id*., at 5.) Plaintiffs continue that counsel for the parties instead "agreed that [Defendant] would hire Phoenix Restoration Company to independently adjust the fire damage." (*Id*.) Plaintiffs contend that they "asked AMCO Insurance to pay the cost of the Phoenix Restoration report because Plaintiffs felt they had wasted their money and time on a mediation that did not produce any offer from [Defendant]." (*Id*., at 10.)

Plaintiffs' counsel and defense counsel both attended and were involved in the inspection by Phoenix, which occurred on November 15, 2013. (*Id*., at 5.) Both Defendant and defense counsel received a copy of the report by Phoenix. (*Id*., at 6.) Defendant has, however, refused to provide Plaintiffs with a copy of the report.[1] The present lawsuit was filed on June 10, 2014.

In response to Plaintiffs' motion, Defendant concedes that "Plaintiffs' factual allegations regarding the Phoenix Restoration report are essentially correct." (Doc. 22, at 4.) Defendant contends that "[i]t is undisputed that the report was prepared at the direction of AMCO's retained counsel after a failed mediation." (*Id*.) Defendant does not contest Plaintiffs' assertion that it was a

---

[1] Plaintiffs have not submitted a formal document request to Defendant requesting the report but Defendant has agreed Plaintiffs could file the motion to compel.

2

joint decision by the parties, based on a similar course of action suggested by the mediator, to have the inspection.  Defendant does, however, argue that the report is privileged and protected by the work product doctrine.

## DISCUSSION

**A.**     **Phoenix Restoration Report.**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such, the requested information must be both nonprivileged and relevant to be discoverable.

Defendant does not argue the relevance of the Phoenix report, but rather contends that it is subject to the protections of the attorney-client privilege and work product doctrine.

> Under federal common law, the essential elements of the attorney-client privilege are:  (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. ***Marten v. Yellow Freight Sys., Inc.***, No. 96–2013–GTV, 1998 WL 13244, *5 (D.Kan. Jan. 6, 1998) (citation omitted).

3

> The privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.' The privilege also protects advice given by the lawyer in the course of representing the client. ... The privilege, however, 'is to be extended no more broadly than necessary to effectuate its purpose.'

New Jersey v. Sprint Corp., 258 F.R.D. 421, 425 (D.Kan.2009) (citations omitted).

The importance of the attorney-client privilege in American jurisprudence is well-established. *See Cincinnati Ins. Co. v. M.S. ex rel. Serrano*, No. 11–2075–JAR/KGG, 2011 WL 6304086 (D.Kan. Dec. 16, 2011) (citing *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 130 S.Ct. 1324, at n. 5 (2010) (holding that the attorney-client privilege is an important 'means of protecting that relationship and fostering robust discussion' between a party and its counsel)). As such, waivers of the privilege are to be narrowly construed. *Id.*

*Helget v. City of Hays*, No. 13-2228-KHV-KGG, 2014 WL 1308890, at *2 (D. Kan. March 28, 2014).

> To establish the applicability of the work product privilege, [the withholding party] must show the following elements: '(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.' *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, No. 05–2192–JWL–DJW, 2008 WL 2548129, at *5 (D.Kan. June 23, 2008) (quoting *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan.2000) (citations omitted)).

4

*Olson v. Shawnee Co. Bd. of Comm'rs*, No. 12-2084-JTM-KGG, 2013 WL 1151481, at *3 (D. Kan. March 20, 2013).

The crux of Defendant's argument is its contention that "all claim activity by defendant was directed by outside counsel" as of October 2012 – more than a year before the inspection by Phoenix.  (Doc. 22, at 6.)

> By the time that defendant's counsel retained Phoenix Restoration there was clearly a dispute over plaintiffs' claim and the parties were in an adverse relationship. Both parties had retained counsel.  Both parties had retained experts.  The parties had even mediated the claim, which was unsuccessful.  The last occurrence giving rise to the claim had taken place almost 2 years before Phoenix Restoration inspected the property. There can be no doubt that the inspection and report by Phoenix Restoration was in anticipation of litigation.

(Doc. 22, at 7-8.)

The Court accepts the general idea that after a failed mediation, steps taken by a party might be seen as "in anticipation of litigation."  However, the uncontested facts indicate that this inspection was a joint effort of the parties taken as an extension of the mediation in an attempt to resolve the matter by agreement. As such, the purpose of the agreed inspection as not to prepare the defense for litigation, but rather to obtain an independent opinion to assist in case resolution. As such, the Court sees no basis for the report to be withheld on the basis of the attorney-client privilege or the work product doctrine.  Plaintiffs' motion is

5

**GRANTED** in regard to the Phoenix Restoration report.

**B.      Production of Documents After October 2012.**

Plaintiffs also argue that "Defendant cannot make a blanket claim of privilege merely by the hiring of [counsel] in October 2012." (Doc. 19, at 20, citations omitted.)  Plaintiffs seem to be requesting some type of advisory opinion from the Court regarding Defendant's general reliance on the attorney-client privilege.  This is improper.  The Court cannot make a determination as to whether or not certain documents are privileged in the absence of actual document requests by Plaintiffs and responses/objections by Defendant.  Further, unlike the Phoenix Restoration report, discussed *supra*, Defendant has not agreed to have this issue put to the Court without formal discovery requests.  (Doc. 22, at 9-10.)  This portion of Plaintiffs' motion is **DENIED** without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (Doc. 18) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 19th day of March, 2015.

 S/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge